**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LUIS SEGOVIA, JOSE ANTONIO
TORRES, PAMELA LYNN COLON,
TOMAS ARES, ANTHONY BUNTEN,
LAVONNE WISE, IRAQ AFGHANISTAN
AND PERSIAN GULF VETERANS OF
THE PACIFIC, and LEAGUE OF WOMEN
VOTERS OF THE VIRGIN ISLANDS,

        Plaintiffs,

v.

BOARD      OF      ELECTION
COMMISSIONERS
  FOR THE CITY OF CHICAGO,

LANGDON D. NEAL,
  in his official capacity as Chairman of the
  Board of Election Commissioners for the
  City of Chicago,

KAREN KINNEY,
  in her official capacity as Rock Island
  County Clerk,

UNITED STATES OF AMERICA,

ASHTON CARTER,
  in his official capacity as the Secretary of
  Defense,

FEDERAL VOTING ASSISTANCE
  PROGRAM,

MATT BOEHMER,
  in his official capacity as Director of the
  Federal Voting Assistance Program,

        Defendants.

Case No. 15-cv-10196

Hon. Joan B. Gottschall
United States District Judge

## ANSWER OF KAREN KINNEY IN HER OFFICIAL CAPACITY AS ROCK ISLAND COUNTY CLERK

Defendant Karen Kinney in her Official Capacity as Rock Island County Clerk, by her attorney, Rock Island County State's Attorney's Office, hereby answers the plaintiffs' complaint as follows:

## NATURE OF THE ACTION

1. This action concerns the federal Uniformed and Overseas Citizens Absentee Voting Act, Pub. L. No. 99-410, codified as amended at 52 U.S.C. §§ 20301 to 20311 ("UOCAVA"), and the Illinois statute implementing its requirements, known as the Illinois Military and Overseas Voter Empowerment ("MOVE") law, *see* 10 Ill. Comp. Stat. 5/20-1 *et seq.*

**ANSWER: This Defendant admits the allegations of Paragraph 1.**

2. Pursuant to these statutes, former Illinois residents are allowed to continue voting in Illinois by absentee ballot for President and for voting representation in the U.S. Senate and U.S. House of Representatives if they reside in the Northern Mariana Islands ("NMI"), American Samoa, or in a foreign country, but not if they reside in Guam, Puerto Rico, or the U.S. Virgin Islands.

**ANSWER: This Defendant admits that under Section 20-2.2 of the Illinois Election Code (the "Code") (10 ILCS 5/20-2.2) "non-resident civilian citizens," defined in Section 20-1(4) of the Code (10 ILCS 5/20-2.2) as civilian citizens of the United States (a) who reside outside the territorial limits of the United States, (b) who had maintained a precinct residence in a county in the State of Illinois immediately prior to their departure from the United States, (c) who do not maintain a residence and are not registered to vote in any other State, and (d) whose intent to return to the State of Illinois may be uncertain, may make application to the election authority having jurisdiction over his or her former residence for a vote by mail ballot containing Federal offices only not less than 10 days before a Federal election. This Defendant further admits that under Section 20-1 of the Code (10 ILCS 5/20-1), "territorial limits of the United States" is defined as each of the several States of the United States, and includes the District of Columbia, the Commonwealth of Puerto Rico, Guam and the Virgin Islands, but does not include American Samoa, the Canal Zone, the Trust Territory of the Pacific Islands or any other territory or possession of the United States. This Defendant admits that such non-resident civilian citizens may, for a Federal election, which is defined in Section 20-1(7) of the Code (10 ILCS 5/20-1(7)) as any general, primary or special election at which candidates are nominated or elected to Federal office, apply for a ballot containing only Federal offices, which include the offices of President and Vice President of the United States, United States Senator, Representative in Congress, delegates and alternate delegates to the national nominating conventions and candidates for the Presidential Preference Primary. See, 10 ILCS 5/20-1(6).**

2

**This Defendant further admits that 52 U.S.C. § 20302 of the United States Code requires each State to permit "overseas voters" to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office, which includes the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress. See, 52 U.S.C. § 20110(3). This Defendant admits that 52 U.S.C. § 20310 of the United States Code defines "overseas" voters as persons who reside outside the United States and are qualified to vote in the last place in which the person was domiciled before leaving the United States or who reside outside the United States and, but for such residence, would be qualified to vote in the last place in which such persons were domiciled before leaving the United States. This Defendant admits that 52 U.S.C. § 20310(8) defines the "United States, where used in the territorial sense," as the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa.**

**This Defendant denies all other remaining allegations in paragraph 2.**

3.  This disparate treatment violates the U.S. Constitution's guarantee of equal protection. Equal protection rights are guaranteed by the Equal Protection Clause of the Fourteenth Amendment and the equal-protection component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *See United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013). The Equal Protection Clause provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**ANSWER: This Defendant neither admits nor denies the allegations in the first sentence of paragraph 3 as it consists of only a legal conclusion and argument and therefore no response is required; however, to the extent a response is required, this Defendant denies them. This Defendant admits the remaining allegations in paragraph 3.**

4.  As President Barack Obama emphasized in his 2015 State of the Union Address, invoking the 50th anniversary of the March on Selma and the Voting Rights Act, "surely we can agree that the right to vote is sacred, that it's being denied to too many[.]" 1 Pub. Papers 36 (Jan. 20, 2015). In his 2014 State of the Union Address, he declared that "[c]itizenship means standing up for everyone's right to vote." 1 Pub. Papers 50 (Jan. 28, 2014). And, in his 2013 State of the Union Address, he explained that "one of the most fundamental rights of a democracy" is the right to vote, and that "when any American, no matter where they live or what their party, are denied that right . . . we are betraying our ideals." 1 Pub. Papers 90 (Feb. 12, 2013).

**ANSWER: The legal documents cited in paragraph 4 speak for themselves and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

5.  As Congress itself recognized in enacting predecessor legislation to UOCAVA, "the right to vote for national officers is an inherent right and privilege of national citizenship," H.R. Rep. No. 94-649, pt. 1, at 5 (1975), reprinted in 1975 U.S.C.C.A.N. 2358, 2362; and "American citizens outside the United States . . . have their own Federal stake – their own

U.S. legislative and administrative interests – which may be protected only through representation in Congress and in the executive branch," *id.* at 7, 1975 U.S.C.C.A.N. at 2364.

**ANSWER: This Defendant admits the allegations of paragraph 5.**

6. The federal and state laws at issue violate this fundamental guarantee of equal protection. Congress selectively extended the franchise only to some U.S. citizens residing outside the States, while denying it to others who are similarly situated. Under UOCAVA, States are required to allow former state citizens residing outside the United States or in the NMI to vote on an absentee basis in federal elections. But under the same law, States are free to deny that right to similarly situated persons residing in the other U.S. Territories overseas. And Illinois law draws even further distinctions, giving preferential treatment to former Illinois citizens residing in American Samoa in addition to the NMI and places outside the United States, while denying the right to vote absentee to former Illinois citizens residing in the other U.S. Territories overseas.

**ANSWER: This Defendant admits the allegations in the third sentence of paragraph 6. This Defendant neither admits nor denies the remaining allegations of paragraph 6 as they consist of only legal conclusions and argument and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

7. The Constitution does not permit Congress and the States to pick and choose which voters living outside the States are able to maintain their right to vote for President and voting representation in the U.S. House and Senate.

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 7 as they consist of only legal conclusions and argument and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

8. Neither Congress nor Illinois has offered any explanation or justification for these arbitrary classifications, nor could they.

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 8 as they consist of only legal conclusions and argument and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

9. Plaintiffs are individuals – Luis Segovia, Jose Antonio Torres, Pamela Lynn Colon, Tomas Ares, Anthony Bunten, and Lavonne Wise – and organizations – Iraq Afghanistan and Persian Gulf Veterans of the Pacific and League of Women Voters of the Virgin Islands – who are injured by virtue of the Defendant's disparate treatment of former state residents residing in the Territories and overseas. The Individual Plaintiffs, who are former Illinois residents, are not permitted to vote in federal elections in Illinois, even though former Illinois residents residing in the NMI, American Samoa, or a foreign country are permitted to do so under Illinois law. The Organizational Plaintiffs count former Illinois residents

among their members, and the inability of their members to vote in federal elections in Illinois diminishes their communities' access to the political process.

**ANSWER: This Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore Defendant denies them.**

10. Plaintiffs seek a declaratory judgment that UOCAVA and Illinois MOVE violate the Fifth Amendment and the Fourteenth Amendment, respectively. Plaintiffs also seek an injunction directing Defendants Board of Election Commissioners for the City of Chicago, Langdon D. Neal, and Karen Kinney to accept Individual Plaintiffs' applications to vote absentee in federal elections in Illinois.

**ANSWER: This Defendant admits the allegations of paragraph 10.**

## PARTIES

11.  a.  Plaintiff Luis Segovia is a U.S. citizen born in Chicago, Illinois in 1978, where he was a resident until 2010 when he became a resident of Guam. Defendants will not permit Mr. Segovia to vote for President or for voting Members of Congress by virtue of his residence in Guam. Under UOCAVA and Illinois MOVE, Mr. Segovia would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if he were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 a, and therefore Defendant denies them.**

b.  Mr. Segovia is a decorated Veteran, serving eighteen months in Iraq from 2005 to 2006 in the U.S. Army, twelve months in Afghanistan from 2008 to 2009 in the Illinois National Guard, and ten months in Afghanistan in 2013 in the Guam National Guard. In Iraq, he served at Forward Operating Base Marez near Mosul, with a primary mission to provide security for the 2005 Iraqi elections. He was honorably discharged in 2008, and joined the Illinois National Guard, where he was deployed to Afghanistan in 2008. He joined the Guam National Guard in 2010 after becoming a resident of Guam. During his second tour in Afghanistan, he thought about how he and his fellow soldiers from Guam were unable to vote for President in 2012 just months prior to deployment even though their service and sacrifice was no different than the soldiers with whom he had previously served in Afghanistan. In fact, two of his fellow Guam soldiers were killed in duty in Afghanistan. Mr. Segovia believes that it is a deep injustice that Guam soldiers are treated as good enough to risk dying to defend democracy, but not good enough to fully enjoy the right to vote. Nonetheless, Mr. Segovia, who was recently promoted to the rank of Staff Sergeant, remains proud to serve his country and defend America's democratic and constitutional principles.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 b, and therefore Defendant denies them.**

    c.   Mr. Segovia also serves his country as a federal employee, with the Department of the Navy's civilian security forces police assigned to Anderson Air Force Base in Guam. His wife, Lulene Baza Segovia, is also a federal employee, providing administrative support services for the Guam Army National Guard.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 c, and therefore Defendant denies them.**

    d.   When Mr. Segovia was a resident of Chicago, he voted for President. Since residing in Guam, he is no longer able to vote for President, although he regularly votes in Guam elections. Mr. Segovia would like to be able to vote for President and have voting congressional representation in Guam, but until this is possible he desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois. He believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 d, and therefore Defendant denies them.**

12.    a.   Plaintiff Jose Antonio Torres is a U.S. citizen born in Ponce, Puerto Rico, in 1955; he currently resides in Carolina, Puerto Rico. From 1982 to 1993, he was a resident of Chicago, Illinois. Defendants will not permit Mr. Torres to vote for President or for voting Members of Congress by virtue of his residence in Puerto Rico. Under UOCAVA and Illinois MOVE, Mr. Torres would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if he were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 a, and therefore Defendant denies them.**

    b.   Mr. Torres is a Vietnam-era Veteran who has a combined 100% disability rating by virtue of injuries sustained during his military service. Mr. Torres was recruited to join the United States Army as a high school student in Ponce, Puerto Rico. In 1973, he was stationed in Germany as part of the 141st Field Artillery, a posting that required top secret clearance. In 1974, he suffered a severe back injury while serving on-duty in Germany that required extended hospitalization. As a result of his serious injuries, he was honorably discharged in 1975.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 b, and therefore Defendant denies them.**

    c.   Mr. Torres became a resident of Chicago, Illinois in 1982. In 1986, he was hired by the United States Postal Service ("USPS"). In 1993, he was transferred from Illinois to Puerto Rico. He worked as a federal employee for USPS in Puerto Rico for another fifteen years, retiring in 2008 after 22 years of federal service. As a federal employee in Puerto Rico, Mr. Torres was required to pay the same federal taxes, including federal income tax, as federal employees living in the States, even as he continued to be disenfranchised.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 c, and therefore Defendant denies them.**

      d.    As a resident of Chicago, Mr. Torres regularly voted for President. Upon being transferred to Puerto Rico by USPS, he was no longer able to vote for President, although he has regularly voted in Puerto Rico elections. Mr. Torres would like to be able to vote for President and have voting congressional representation in Puerto Rico, but until this is possible he desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois. He believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 d, and therefore Defendant denies them.**

    13.   a.   Plaintiff Pamela Lynn Colon is a U.S. citizen born in Chicago, Illinois in 1959, where she was a resident until 1992 when she became a resident of the U.S. Virgin Islands; she currently resides in St. Croix. Defendants will not permit Ms. Colon to vote for President or for voting members of Congress by virtue of her residence in the U.S. Virgin Islands. Under UOCAVA and Illinois MOVE, Ms. Colon would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if she were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 a, and therefore Defendant denies them.**

      b.    Ms. Colon is an attorney with a significant federal criminal defense practice. From 1996 to 2000 she served as the Assistant Federal Public Defender in St. Thomas, Virgin Islands, and is past-President of the Virgin Islands Bar Association. She has defended numerous clients in the Virgin Islands who were prosecuted for federal crimes, including several facing the possibility of life in prison, and even potentially the death penalty. Ms. Colon believes democratic accountability is the foundation of a functional and just criminal-justice system, a foundation that is lacking in the Virgin Islands because of the absence of voting representation in Congress and the right to vote for President. In her view, every American citizen should have democratic representation in the federal criminal law they are required to follow, in the federal judges who try and sentence those accused of federal crimes, and in the federal prosecutors who enforce the law.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 b, and therefore Defendant denies them.**

      c.    Ms. Colon's son, who is a resident of the Virgin Islands, will turn 18 next year. While he will be required to register for selective service, he will not be able to vote for President in the General Election (even though he *will* be eligible to vote in the Primary). Ms. Colon believes that if you can be drafted to serve in the military, you should be able to vote for

your Commander-in-Chief. She also believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 c, and therefore Defendant denies them.**

d. As a resident of Chicago, Ms. Colon regularly voted for President. Once she established her residency in the Virgin Islands in 1992, she became unable to vote for President, although she has regularly voted in elections in the U.S. Virgin Islands. Ms. Colon would like to be able to vote for President and have voting congressional representation in the U.S. Virgin Islands, but until this is possible she desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 d, and therefore Defendant denies them.**

14. a. Plaintiff Tomas Ares is a U.S. citizen born in San Lorenzo, Puerto Rico in 1955, where he currently resides. From 1967 to 2007, he was a resident of Chicago, Illinois. Defendants will not permit Mr. Ares to vote for President or for voting members of Congress by virtue of his residence in Puerto Rico. Under UOCAVA and Illinois MOVE, Mr. Ares would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if he were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 a, therefore Defendant denies them.**

b. Mr. Ares is a Vietnam-era Veteran who joined the U.S. Army in 1971 at the age of 17. After being stationed in Germany, he was honorably discharged in 1972 on the ground that he was not of the legal age to serve. Mr. Ares' father, who was born in Puerto Rico in 1902, served in the U.S. Army's 65th Infantry from 1920 through 1944. His father passed away in 1979 without ever having the opportunity to vote for President, something that has always troubled Mr. Ares.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 b, therefore Defendant denies them.**

c. As a resident of Chicago, Mr. Ares regularly voted for President. Upon retiring in Puerto Rico, Mr. Ares can no longer vote for President, although he regularly votes in Puerto Rico elections. Mr. Ares would like to be able to vote for President and have voting congressional representation in Puerto Rico, but until this is possible he desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois. He believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 c, therefore Defendant denies them.**

8

15.    a.    Plaintiff Anthony Bunten is a U.S. citizen born in Moline, Illinois in 1976, where he was a resident until 1997, when he became a resident of Guam. Defendants will not permit Mr. Bunten to vote for President or for voting members of Congress by virtue of his residence in Guam. Under UOCAVA and Illinois MOVE, Mr. Bunten would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if he were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant admits that U.S. citizenship and residency in Rock Island County are statutory prerequisites to register to vote in Rock Island County, Illinois. This Defendant admits that a "non-resident civilian citizen" as defined in 10 ILCS 520-1(4), or an "overseas voter" as defined in 52 U.S.C. § 20310, would not be eligible under those statutes to apply for a mail or absentee ballot in Illinois if a resident of Guam, but would be so eligible if a resident of NMI, American Samoa, or another country outside of the territorial limits of the United States, and defined therein. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 a.**

    b.    Mr. Bunten is a Veteran who joined the U.S. Navy directly out of high school in 1994. He was honorably discharged in 1997. Shortly thereafter, he moved to Guam, where he established residency in 1997 to join his now-wife, Barbara Perez Hattori. As a resident of Illinois, Mr. Bunten voted for President. Once he became a Guam resident, he was no longer able to vote for President, although he regularly votes in Guam elections.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 b, therefore Defendant denies them.**

    c.    Mr. Bunten would like to be able to vote for President and have voting congressional representation in Guam, but until this is possible he desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois. He believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 c, therefore Defendant denies them.**

16.    a.    Plaintiff Lavonne Wise is a U.S. citizen born in Queens, New York; she currently resides in St. Croix in the U.S. Virgin Islands. From 2003 to 2009, she was a resident of Chicago, Illinois. Defendants will not permit Ms. Wise to vote for President or for voting Members of Congress by virtue of her residence in the U.S. Virgin Islands. Under UOCAVA and Illinois MOVE, Ms. Wise would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if she were a resident of the NMI, American Samoa, or a foreign country.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 a, therefore Defendant denies them.**

b.    As a resident of Chicago in 2008, Ms. Wise voted for President by absentee ballot while temporarily working in St. Croix. Later, when she became a resident of St. Croix in 2009, she became unable to vote for President, although she regularly votes in elections in the U.S. Virgin Islands. Previously, from 1990-1992, Ms. Wise was a resident of St. Maarten, Netherland Antilles, moving there from Atlanta, Georgia. While residing in a foreign country, Ms. Wise did not lose her right to vote for President, as she did when she began residing in the Virgin Islands.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 b, therefore Defendant denies them.**

c.    Ms. Wise would like to be able to vote for President and have voting congressional representation in the U.S. Virgin Islands, but until this is possible she desires to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois. She believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 c, therefore Defendant denies them.**

17.    a.    Plaintiff Iraq Afghanistan and Persian Gulf Veterans of the Pacific ("IAPGVP") is a nonprofit organization founded in 2014 whose mission is to provide opportunities to engage, enrich, and empower Pacific Island Veterans of Iraq, Afghanistan, and the Persian Gulf and their families. Its membership includes current residents of Guam who are former residents of Illinois and other States. IAPGVP seeks to honor with dignity the sacred memory of the war dead, and by doing so, ensure that the lasting legacy of the fallen is responsibility toward, not exploitation of, their sacrifice. IAPGVP was created to improve the quality of life for veterans of the Persian Gulf, Iraq, and Afghanistan era who reside in Guam, the NMI, and the Federated States of Micronesia, where thousands of veterans cannot vote for President of the United States and lack voting representation in Congress.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 a, therefore Defendant denies them.**

b.    IAPGVP recognizes that political empowerment of Pacific Island veterans and their communities is critical to addressing the pressing needs of these veterans. IAPGVP believes that continuing political disenfranchisement contributes to the health-care crisis facing Guam veterans. While up to one in eight adults in Guam is a veteran, and while the casualty rate for Guam soldiers in Iraq and Afghanistan has been 4.5 times the national average, in 2012, Guam ranked below every State in medical-care spending per veteran. IAPGVP believes that if veterans and others in Guam who would be able to vote for President if they lived in the NMI, American Samoa, or a foreign country could fully exercise their right to vote, it would provide new opportunities for national political engagement related to Guam veterans issues, including healthcare issues. IAPGVP also believes it would help create a much-needed political incentive for Congress and the President to take action to ensure full voting rights for all of Guam's residents. IAPGVP believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 b, therefore Defendant denies them.**

18.   a.   The League of Women Voters of the Virgin Islands ("LWV-VI"), founded in 1968, is a non-profit, non-partisan political organization founded to promote political responsibility through informed voters who actively participate in government. Its membership includes current residents of the Virgin Islands who are former residents of Illinois and other States. The centerpiece of the LWV-VI's activities is to expand voter participation and give a voice to all Americans. LWV-VI is grounded in the principle that democracy should work for all its citizens. Members of LWV-VI work to ensure that the realities of America's system of government live up to its democratic and constitutional ideals.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 a, therefore Defendant denies them.**

b.   LWV-VI recognizes that political empowerment of Virgin Islanders is critical to addressing the pressing needs of the Virgin Islands community. LWV-VI believes that continuing political disenfranchisement contributes to many hardships facing Virgin Islanders, from economic development to healthcare to the environment. LWV-VI believes that if Virgin Islanders who would be able to vote for President if they lived in the NMI, American Samoa, or a foreign country could fully exercise their right to vote, it would provide new opportunities for national political engagement on issues that affect daily life in the Virgin Islands. LWV-VI also believes it would help create a much-needed political incentive for Congress and the President to take action to ensure full voting rights for all Virgin Islanders. LWV-VI believes that where one lives as a U.S. citizen should not affect one's right to vote.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 b, therefore Defendant denies them.**

19. Defendant Board of Election Commissioners for the City of Chicago is the "election authority" that has jurisdiction over the precinct of former residence of Individual Plaintiffs Luis Segovia, Jose Antonio Torres, Pamela Lynn Colon, Tomas Ares, and Lavonne Wise, and is charged with providing absentee ballots to former Chicago residents now residing in the NMI, American Samoa, or in a foreign country. *See* 10 Ill. Comp. Stat. 5/20-2.2; *id.* 5/1-3(8); *id.* 5/6-21.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, therefore Defendant denies them.**

20. Defendant Langdon D. Neal is being sued in his official capacity as Chairman of the Board of Election Commissioners for the City of Chicago. In that capacity, Chairman Neal is responsible for the administration of the Board of Election Commissioners for the City of Chicago. *See* 10 Ill. Comp. Stat. 5/6-24.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, therefore Defendant denies them.**

21. Defendant Karen Kinney is being sued in her official capacity as the Rock Island County Clerk. The County Clerk is the "election authority" that has jurisdiction over the precinct of former residence of Individual Plaintiff Anthony Bunten, and is charged with providing absentee ballots to former Rock Island County residents now residing in the NMI or American Samoa, or in a foreign country. *See* 10 Ill. Comp. Stat. 5/20-2.2; *id.* 5/1-3(8); *id.* 5/5-4.

**ANSWER: Defendant admits the first sentence of Paragraph 21. This Defendant admits that the County Clerk of Rock Island County is the election authority having jurisdiction over precincts within the County of Rock Island and is charged with providing absentee or mail ballots to individuals and qualified former Rock Island County residents now residing in NMI, American Samoa, or in another country outside the territorial limits of the United States pursuant to 10 ILCS 5/20-2.2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21, and therefore Defendant denies them.**

22. Defendant Ashton Carter is being sued in his official capacity as the Secretary of Defense. Under Executive Order Number 12,642, 53 Fed. Reg. 21,975, at 21,975 (June 8, 1988), the Secretary of Defense is "designated as the 'Presidential designee'" under UOCAVA, 52 U.S.C. § 20301(a).

**ANSWER: This Defendant admits the allegations in the second sentence of Paragraph 22. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and therefore Defendant denies them.**

23. Defendant Federal Voting Assistance Program ("FVAP") is charged with the administration of federal responsibilities under UOCAVA pursuant to a delegation of authority by the Secretary of Defense. *See* Department of Defense Instruction 1000.04 (Sept. 13, 2012).

**ANSWER:  This Defendant admits the allegation in Paragraph 23.**

24. Defendant Matt Boehmer is being sued in his official capacity as Director of FVAP. In that capacity, Director Boehmer is responsible for all aspects of FVAP and has the authority to administer that responsibility, including the establishment and maintenance of a voting assistance program "to assist all eligible voters as covered by" UOCAVA. *See* Department of Defense Instruction 1000.04, at Encl. 3.

**ANSWER: This Defendant admits that the Director of FVAP is responsible for all aspects of FVAP and has the authority to administer that responsibility, including the establishment and maintenance of a voting assistance program "to assist all eligible voters as covered by**

**UOCAVA. This defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 24, and therefore Defendant denies them.**

25. Each of the above-named Defendants has been sued in its, his or her official capacity. At all relevant times, Defendants have acted under the color of statutes, ordinances, regulations, customs and usages of the State of Illinois or the United States.

**ANSWER: This Defendant admits she is being sued in her official capacity and that she has acted under the color of statutes, ordinances, regulations, customs, and usages of the State of Illinois or the United States. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35, and therefore Defendant denies them.**

## JURISDICTION AND VENUE

26. This action seeks declaratory relief under the Federal Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201-2202.

**ANSWER: This Defendant admits the allegations in Paragraph 26.**

27. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under the U.S. Constitution. The Court also has subject matter jurisdiction under 28 U.S.C. § 1343(a)(3), because this is an action to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

**ANSWER: This Defendant admits the allegations in Paragraph 27.**

28. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (e)(1) because the United States, Ashton Carter, the Federal Voting Assistance Program, and Matt Boehmer are federal defendants and Defendants Board of Election Commissioners for the City of Chicago and Langdon D. Neal reside in this district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Karen Kinney and all of the non-federal defendants are residents of Illinois.

**ANSWER: This Defendant denies venue is proper as to her.**

## FACTUAL ALLEGATIONS

### A. History Of Overseas U.S. Territories

29. The United States has five Territories: Puerto Rico, Guam, the U.S. Virgin Islands, American Samoa, and the NMI. These jurisdictions are home to over 4 million people, a population greater than nearly half the States and larger than the five smallest States

combined. According to the U.S. Census, more than 98% of the residents of these areas are racial or ethnic minorities.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29, therefore Defendant denies them.**

30. Puerto Rico and Guam became a part of the United States in 1898 following the Spanish-American War. American Samoa became part of the United States after Deeds of Cession were signed in 1900 and 1904. The U.S. Virgin Islands was purchased by the United States from Denmark in 1917. The NMI became part of the United States in 1986. Congress recognized people born in Puerto Rico were U.S. citizens in 1917, in the U.S. Virgin Islands in 1927, in Guam in 1950, and in the NMI in 1986; people born in American Samoa are recognized as U.S. nationals owing permanent allegiance to the United States. While each area has a unique history and people, the Territories are similarly situated with respect to their relationship to the federal government. While each has a local government, ultimate authority rests with Congress, which has broad power over the Territories under Article IV, Section 3 of the U.S. Constitution.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, therefore Defendant denies them.**

31. The Territories have a proud tradition of military service, with their residents serving in every major American conflict since World War I. Territorial residents volunteer to serve in the U.S. Armed Forces at rates that are generally significantly higher than the 50 States. Over 150,000 veterans currently reside in the Territories. Nine Puerto Ricans have been awarded the Medal of Honor, the highest military honor, with the Puerto Rico-based 65th Infantry having been awarded the Congressional Gold Medal, the highest civilian honor. In Iraq and Afghanistan, the casualty rates for Guam and the U.S. Virgin Islands were 4.5 times and three times the national average, respectively. American Samoa and the NMI have had similarly high casualty rates. Like other Americans, U.S. citizens who reside in the Territories are required to register for selective service when they turn eighteen. These Americans are subject to the military draft the same as other Americans, with more than 50,000 territorial residents serving in Vietnam.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31, therefore Defendant denies them.**

32. Residents of the Territories also contribute a significant amount to the federal treasury through federal taxes. In 2014 alone, residents of the Territories paid more than $3.5 billion in federal taxes according to the 2014 Internal Revenue Service Data Book. Territorial residents pay most federal taxes, although only certain federal employees pay federal income taxes. Territorial residents also receive most federal benefits, although many major benefits like Medicaid have funding levels capped at levels well below what residents of the States receive. A 2014 report by the Government Accountability Office examining federal taxation and benefits in Puerto Rico suggests that if residents of the Territories were

treated the same as residents of the States for purposes of federal taxation and benefits, additional federal program spending would exceed new federal tax revenue.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32, therefore Defendant denies them.**

33. Federal criminal laws fully apply in the Territories. In 2012, the most recent year for available statistics, more than 2,100 individuals were prosecuted for federal crimes in the Territories, with more than 1,500 receiving a criminal sentence according to the Bureau of Justice Statistics Federal Justice Statistics Program. Under federal law, territorial residents may face life in prison or even the death penalty, even though none of the Territories provide for capital punishment, and several expressly prohibit it. Moreover, because of their disenfranchisement, there is no democratic accountability with respect to the federal laws they must follow, or with the federal prosecutors and federal judges who enforce the law, proceed over trials, and determine sentencing.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33, therefore Defendant denies them.**

34. While Congress has broad power over the Territories, their sole federal representation is a non-voting Delegate in the U.S. House of Representatives, who shares many of the privileges of other Members, but who cannot vote on final passage of legislation. The Territories lack any form of representation, voting or not, in the U.S. Senate. In presidential elections, territorial residents fully participate in the party primaries, with Delegates attending the national party conventions. But when it comes to the General Election, the Territories are not included in the Electoral College, as are residents of the States (and the District of Columbia based on the Twenty-Third Amendment).

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, therefore Defendant denies them.**

35. Voting trends in the Territories cross party lines. For example, while the current Puerto Rico Governor is a Democrat, its immediate past Governor is a Republican. Both Guam and the NMI currently have Republican Governors but Democratic Non-Voting Delegates to Congress. The situation is reversed in American Samoa, with a Democratic Governor and a Republican Non-Voting Delegate. The Virgin Islands has an Independent Governor (who is a former Republican), and a Democratic Non-Voting Delegate. Perhaps most striking, Guam includes a straw poll for President on its General Election ballot, with Guam voters, who cast their votes a day ahead of the rest of the country, predicting the eventual winner in every presidential election since the first straw poll in 1980.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35, therefore Defendant denies them.**

36. Residents of U.S. Territories are able to vote for President should they become a resident of a State or the District of Columbia. Indeed, there is a territorial diaspora of more than 5

million Americans living in the States and the District of Columbia who have ties to the Territories, whether through family or having actually lived in a Territory. Included among those in the diaspora who will have a particularly influential political voice in 2016 are the more than 1 million who live in Florida, 423,000 in Pennsylvania, 108,000 in Ohio, 92,000 in Virginia, and 89,000 in North Carolina. Each year, tens of thousands of territorial residents move to the States, with the largest influx to Florida; thousands of residents of the States also move to the Territories, where they become disenfranchised, depending on the Territory to which they move.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, therefore Defendant denies them.**

### B. History And Structure Of UOCAVA

37. Congress enacted UOCAVA in 1986 to "facilitate absentee voting by United States citizens, both military and civilian, who are overseas." H.R. Rep. No. 99-765, at 5 (1986), reprinted in 1986 U.S.C.C.A.N. 2009, at 2009.

**ANSWER: This Defendant admits the allegations in Paragraph 37.**

38. UOCAVA built on existing federal statutes, which Congress enacted to safeguard the fundamental nature of voting rights and to cure a potential violation of equal protection by remedying the selective distribution of the franchise to Americans who had left their State of residence and not adopted another state residence. *See* H.R. Rep. No. 94-649, pt. 1, at 2-3 (1975), reprinted in 1975 U.S.C.C.A.N. 2358, 2359-60.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38, therefore Defendant denies them.**

39. Among other things, UOCAVA was enacted to supply alternative forms of voting to overseas citizens who seek to comply with state procedures but are unable to acquire or timely submit state absentee ballots. H.R. Rep. No. 99-765, at 5-6, 1986 U.S.C.C.A.N. at 2009-10.

**ANSWER: This Defendant admits the allegations in Paragraph 39.**

40. Section 102 of UOCAVA (now codified as amended at 52 U.S.C. § 20302) reaffirms the pre-existing requirement that States must "provide for absentee registration and absentee voting by absent uniformed services voters and overseas voters." H.R. Rep. No. 99-765, at 20, 1986 U.S.C.C.A.N. at 2024; *see also* 52 U.S.C. § 20302(a)(1) (Each State shall "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office.").

**ANSWER: This Defendant admits the allegations in Paragraph 40.**

41. Section 107 of UOCAVA defines the "overseas voter[s]" covered by section 102. As amended, the provision defines "overseas voter" to include an absent uniformed services voter, "a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States," and "a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States." 52 U.S.C. §20310(5)(B)-(C).

**ANSWER: This Defendant admits the allegations in Paragraph 41.**

42. The same section also defines "State" as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa." *Id.* § 20310(6). Consistent with this definition, it also provides that the term "'United States,' where used in the territorial sense, means" the same grouping of States and Territories. *Id.* § 20310(8).

**ANSWER: This Defendant admits the allegations in Paragraph 42.**

43. The NMI is excluded from both definitions. No explanation is given for this arrangement in the legislative history.

**ANSWER: This Defendant admits the allegations in the first sentence in paragraph 43. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, therefore Defendant denies them.**

44. The effect of UOCAVA's statutory language is to protect the right to vote for President and voting representation in the U.S. House and Senate for *certain* U.S. citizens who move outside the States, *but not for others*, drawing lines even between U.S. citizens based on the *particular* overseas Territory in which they reside.

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 44 as they consist of legal conclusions and argument and therefore no response is required; however to the extent a response is required, this Defendant denies them.**

C. **History And Structure Of The Illinois Overseas Voting Statute**

45. Illinois has adopted its own provision, known as Illinois MOVE, protecting and regulating the voting rights of overseas citizens. Illinois MOVE provides that U.S. citizens indefinitely residing "outside the territorial limits of the United States" can vote by absentee ballot as Illinois residents in federal elections for President and the U.S. House and Senate. 10 Ill. Comp. Stat. 5/20-1(4); *id*. at 5/20-2.2.

**ANSWER: This Defendant admits that the State of Illinois has adopted its own provisions protecting and regulating the voting rights of overseas citizens. See, 10 ILCS 5/20-1, et seq. This Defendant adopts her Answer to paragraph 2 as her Answer to the remaining allegations in Paragraph 45.**

17

46. The Illinois statute defines the "territorial limits of the United States" as a U.S. state, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands. *Id.* 5/20-1(1). As with UOCAVA, it excludes the NMI from the definition. But it goes further, expressly excluding American Samoa from the definition as well. *Id.*

**ANSWER: This Defendant admits the allegations in Paragraph 46.**

47. Thus, under Illinois law, former Illinois residents living in a foreign country, or in American Samoa or the NMI – but not other U.S. Territories overseas – may vote in Illinois by absentee ballot for President and voting representation in the U.S. House and Senate.

**ANSWER: This Defendant adopts her Answer to paragraph 2 as her Answer to Paragraph 47.**

### D. Equal Protection Principles

48. The Equal Protection Clause of the U.S. Constitution provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**ANSWER: This Defendant admits the allegations in Paragraph 48.**

49. Equal-protection requirements apply both to federal and state laws. *See, e.g.*, *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.").

**ANSWER: This Defendant admits that equal protection requirements apply both to federal and state laws.**

50. The Equal Protection Clause guarantees a citizen's "right to participate in elections on an equal basis" when that right is threatened by "statutes that selectively distribute the franchise." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). "[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with" equal protection. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966). This constitutional principle is necessary to safeguard voters' ability to protect their stake in the affairs of government "by exercising the equal right to vote." *Evans v. Cornman*, 398 U.S. 419, 426 (1970).

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 50 as the cases cited speak for themselves and therefore no response is required; however to the extent a response is required, this Defendant denies them.**

51. Federal and Illinois law protect the right to vote for *certain* U.S. citizens who move overseas, while denying it to others who are similarly situated, even going so far as to draw

lines based on the *particular* Territory in which a person resides. Neither Congress nor Illinois has offered any justification for this arbitrary classification.

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 51 as they consist of legal conclusions and argument and therefore no response is required; however to the extent a response is required, this Defendant denies them.**

## CLAIM FOR RELIEF

**UOCAVA And The Illinois Statute Violate The Equal-Protection And Due Process Guarantees Under The Fifth And Fourteenth Amendments And 42 U.S.C. § 1983 By Treating Differently Former State Residents Depending On Where They Now Reside Outside The States**

Plaintiffs incorporate by reference paragraphs 1 through 51 as if set forth here in full.

**ANSWER: This Defendant adopts her Answers to Paragraphs 1 through 51.**

52. By treating similarly situated former state residents differently based on where they reside overseas, UOCAVA and Illinois MOVE violate the equal-protection and due process guarantees of the Fifth and Fourteenth Amendments and 42 U.S.C § 1983. The two statutes protect the voting rights of *certain* U.S. citizens who live outside the States in *certain* overseas Territories or foreign countries, while denying those rights to similarly situated U.S. citizens who live in *other* overseas Territories.

**ANSWER: This Defendant neither admits nor denies the allegations in paragraph 52 as they consist of legal conclusions and arguments and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

53. No legislature has articulated a legitimate justification for this arbitrary and disparate treatment of overseas citizens. Even if some justification had been offered for such disparate treatment, it could not pass constitutional muster under *any* standard of review.

**ANSWER: This Defendant is without knowledge or information sufficient to form a belief as the truth of the first sentence of Paragraph 53, and therefore Defendant denies them. This Defendant neither admits nor denies the remaining allegations of Paragraph 53 as they consist of legal conclusions and arguments and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

54. By reason of the foregoing, Defendants, acting under color of federal and state law, have deprived and will continue to deprive Plaintiffs of equal protection under the law secured to them by the Fourteenth Amendment and the Fifth Amendment, and protected against state interference specifically by 42 U.S.C. § 1983.

**ANSWER: This Defendant neither admits nor denies the remaining allegations of Paragraph 54 as they consist of legal conclusions and arguments and therefore no response is required; however, to the extent a response is required, this Defendant denies them.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request of this Court the following equitable relief:

a.  An order declaring that 52 U.S.C. § 20310 and 10 Ill. Comp. Stat. 5/20-1 of the Illinois Compiled Statutes violate the Fifth Amendment, the Fourteenth Amendment, and 42 U.S.C § 1983 by defining "United States" and "territorial limits of the United States" in a manner that discriminates among former Illinois residents living overseas outside the States;

b.  A preliminary and permanent order enjoining Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, to accept applications to vote absentee in the next federal election in Illinois from Individual Plaintiffs.

c.  Attorneys' fees and costs to which Plaintiffs might be entitled by law; and

d.  Such other and further relief as this Court may deem just and appropriate.

**ANSWER: This Defendant denies that plaintiffs are entitled to the relief sought. Further answering, Defendant denies any allegations in the complaint to which it did not specifically respond. Defendant reserves the right to assert any additional and further defenses as may be revealed by discovery or otherwise.**

Respectfully Submitted,

Karen Kinney in her Official Capacity as Rock Island County Clerk, Defendant.

By:    /s/ Patricia Castro
Patricia Castro
Assistant State's Attorney
Bar #6242650
State's Attorney's Office
1504 3rd Avenue, 2nd Floor
Rock Island, IL 61201
Phone: (309) 558-3202
Fax: (309) 786-4473
castrop@co.rock-island.il.us