## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

———————————————————————

LUIS SEGOVIA, *et al.*,

            Plaintiffs,

      v.

BOARD OF ELECTION COMMISSIONERS
FOR THE CITY OF CHICAGO, *et al.*,

           Defendants.

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)

15-cv-10196

Judge Joan B. Gottschall

### FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Date:  February 10, 2016

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

ZACHARY T. FARDON
United States Attorney

THOMAS WALSH
Assistant United States Attorney

*/s/ Caroline Anderson*
Caroline J. Anderson
IL Bar No. 6308482
Trial Attorney
U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7220
Washington, D.C.  20001
Phone: (202) 305-8645
Caroline.J.Anderson@usdoj.gov

*Counsel for Federal Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

   I.   LEGAL FRAMEWORK ........................................................................................ 2

   II.   PLAINTIFFS' ALLEGATIONS ........................................................................... 5

ARGUMENT ...................................................................................................................... 7

   I.   PLEADING STANDARDS.................................................................................... 7

   II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH REFLIEF CAN BE GRANTED ...................................................................................................... 7

      A.   UOCAVA Does Not Prohibit Plaintiffs from Voting for Federal Office via Absentee Ballot. ................................................................................................................ 7

      B.   UOCAVA Meets the Requirements of Equal Protection and Due Process. ................. 9

        i.   Standard of Review ................................................................................................ 10

        ii.   UOCAVA Passes Rational Basis Review ................................................................. 11

      C.   Plaintiffs' § 1983 Claim Against the Federal Defendants Must Be Dismissed.......... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze,*

460 U.S. 780 (1983) ................................................................................ 2

*Ashcroft v. Iqbal,*

556 U.S. 662 (2009) ................................................................................ 7

*Att'y Gen. of the Territory of Guam v. United States,*

738 F.2d 1017 (9th Cir. 1984) ................................................................ 3

*City of Cleburne v. Cleburne Living Ctr., Inc.,*

473 U.S. 432 (1985) .............................................................................. 10

*District of Columbia v. Carter,*

409 U.S. 418 (1973) .............................................................................. 15

*Dorr v. United States,*

195 U.S. 138 (1904) .............................................................................. 14

*E.E.O.C. v. Concentra Health Servs, Inc.,*

496 F.3d 773 (7th Cir. 2007) .................................................................. 7

*Igartua De La Rosa v. United States,*

32 F.3d 8 (1st Cir. 1994) ................................................................ passim

*Igartua v. United States,*

626 F.3d 592 (1st Cir. 2010) ................................................................... 3

*Katzenbach v. Morgan,*

384 U.S. 641 (1966) ........................................................................ 10, 13

*McDonald v. Bd. of Election Comm'rs,*

394 U.S. 802 (1969) .............................................................................. 13

*Meiners v. Moriarity*,

    563 F.2d 343 (7th Cir. 1977) ................................................................. 15

*Reed v. City of Chicago*,

    77 F.3d 1049 (7th Cir. 1996) ................................................................. 15

*Romeu v. Cohen*,

    121 F.Supp.2d 264 (S.D.N.Y. 2000) ...................................................... 10

*Romeu v. Cohen*,

    265 F.3d 118 (2d Cir. 2001) ........................................................... passim

*Semler v. Oregon State Bd. of Dental Exam'rs*,

    294 U.S. 608 (1935) ............................................................................ 14

*Tamayo v.* Blagojevich,

    526 F.3d 1074 (7th Cir. 2008) ................................................................ 7

**Statutes**

10 Ill. Comp. Stat. Ann. 5/20-1 ..................................................... passim

42 U.S.C. § 1983 ....................................................................... 1, 15

52 U.S.C. § 20302 ..................................................................... 4, 8, 9

52 U.S.C. § 20310 ..................................................................... passim

U.S. CONST. amend. XVII ............................................................. 3, 14

U.S. CONST. art. I ....................................................................... 3, 14

U.S. CONST. art. II ....................................................................... 2, 7

**Other Authorities**

H.R. REP. NO. 99-765 (1986) ............................................................ 11

Joseph E. Horey, *The Right of Self-Government in the Commonwealth of the Northern*

    *Mariana Islands*, 4 Asian-Pac. L. & Pol'y J. 180 (2003) ......................... 13

S. REP. NO. 94-121 (1975) ............................................................... 12

## INTRODUCTION

Plaintiffs in this action are six individuals who allege they are former residents of Illinois that now reside in Puerto Rico, Guam, or the U.S. Virgin Islands, along with two organizations that promote voting rights in the territories, and who challenge the constitutionality of the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20310 ("UOCAVA") and Illinois Military and Overseas Voter Empowerment law ("Illinois MOVE"), 10 Ill. Comp. Stat. Ann. 5/20-1. Plaintiffs seek declaratory and injunctive relief, asserting that these statutes operate to preclude them from voting absentee in Illinois in federal elections in violation of their equal protection and due process rights.[1]

Plaintiffs' claims should be dismissed for failure to state a claim against the Federal Defendants because UOCAVA does not impose the voting disability of which Plaintiffs complain. Rather, that restriction results from requirements imposed by *Illinois* law, as well as provisions of the Constitution, which delegate to the states the authority to regulate voting in federal elections. It is not UOCAVA that prevents citizens who have become qualified to vote in a particular state from continuing to vote in that state by absentee ballot during a period of residence in Puerto Rico, Guam, or the U.S. Virgin Islands.

As an independent basis for dismissal, UOCAVA meets the requirements of Equal Protection and Due Process. UOCAVA neither affects a suspect class nor infringes upon a fundamental right, and the statute accordingly must be upheld so long as it is rationally related to

---

[1] Specifically, Plaintiffs seek a declaratory judgment holding that UOCAVA and Illinois MOVE violate the Fifth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983 by defining the United States in a manner that discriminates among former Illinois residents living overseas. Further, Plaintiffs seek an order directing Defendants - the United States, Secretary of Defense Ashton Carter, the Federal Voting Assistance Program, Director of the Federal Voting Assistance Program Matt Boehmer (hereafter "the Federal Defendants"), and the Board of Election Commissioners for the City of Chicago, Chairman of the Board of Election Commissioners, and the Rock Island County Clerk (hereafter "the Illinois Defendants") - to accept from the individual Plaintiffs applications to vote absentee in the next federal election in Illinois.

a legitimate government interest. Under that highly deferential standard, UOCAVA satisfies constitutional requirements. In enacting UOCAVA, Congress sought to expand voting rights to citizens overseas who, in the absence of the statute, might otherwise be completely disenfranchised. As the First and Second Circuits have concluded, Congress had a rational basis for the distinction in absentee voting rights drawn by UOCAVA between State residents who move overseas and those who move within the United States, as defined to include Guam, Puerto Rico, and the U.S. Virgin Islands. Absent UOCAVA, some citizens who move to foreign countries might lose the right to vote in federal elections entirely. Former Illinois residents that move to Puerto Rico, Guam, and the U.S. Virgin Islands, by contrast, gain the right to vote in federal elections for each of the territories' representatives in Congress. Moreover, insofar as UOCAVA's protections have not been expanded, Congress is entitled to legislate incrementally in addressing absentee voting rights for overseas voters, without resolving all issues that may arise. For these reasons, the Complaint should be dismissed as against the Federal Defendants for failure to state a claim.[2]

## BACKGROUND

### I. LEGAL FRAMEWORK

Article II, section 1, of the Constitution provides, "[e]ach *State* shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the Whole Number of Senators and Representatives to which the *State* may be entitled in the Congress" to elect the President and Vice-President of the United States. U.S. Const. art. II, § 1, cl. 2 (emphasis added). Accordingly, the right to vote for President and Vice-President of the United States inheres in states, rather than in citizens. *See Anderson v. Celebrezze*, 460 U.S. 780, n.18 (1983)

---

[2] As addressed below, beyond the failure to state a claim, the Federal Defendants cannot in any event be enjoined to "accept applications to vote absentee" in Illinois federal elections.

("The Constitution expressly delegates authority to the states to regulate selection of Presidential electors . . ."); *Att'y General of the Territory of Guam v. United States*, 738 F.2d 1017, 1019 (9th Cir. 1984), *cert. denied*, 469 U.S. 1209 (1985) ("[T]he Constitution does not grant to American citizens the right to elect the President.").  Accordingly, "U.S. citizens who are residents of Puerto Rico and the other U.S. territories have not received similar rights to vote for presidential electors because the process set out in Article II for the appointment of electors is limited to 'States' and does not include territories." *Romeu v. Cohen*, 265 F.3d 118, 123 (2d Cir. 2001). Because Puerto Rico, Guam, and the U.S. Virgin Islands are not states, "those Courts of Appeals that have decided the issue have all held that the absence of presidential and vice-presidential voting rights for U.S. citizens living in U.S. territories does not violate the constitution." *Id.* (per curiam) (citing *Igartua De La Rosa v. United States*, 32 F.3d 8, 9-10 (1st Cir. 1994)) [hereinafter *Igartua I*]; *Att'y General of the Territory of Guam*, 738 F.2d at 1019 ("Since Guam . . . is not a state, it can have no electors, and plaintiffs cannot exercise individual votes in a presidential election.").

> Article I, section 2, of the Constitution states that:

>  [t]he House of Representatives shall be composed of Members chosen every second Year by the People *of the several States*, and Electors in each *State* shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature . . . The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed *in each State* by the Legislature thereof . . .

U.S. CONST. art. I, § 2, cl. 1-4 (emphasis added).  The Seventeenth Amendment to the Constitution similarly specifies that "[t]he Senate of the United States shall be composed of two Senators from each State, elected by the people thereof . . . The electors *in each State* shall have the qualifications requisite for electors . . ." U.S. CONST. amend. XVII (emphasis added).  The text of Article I and the Seventeenth Amendment make clear that only the people of a *state* may vote for the Senators and members of the House of Representatives from that state. *See Igartua*

*v. United States*, 626 F.3d 592, 596 (1st Cir. 2010) ("The text of the U.S. Constitution grants the ability to choose, and so to vote for, members of the House Representatives to 'the People of the Several States'.") (internal citation omitted).  As with the election of the President and Vice-President, citizens of the territories do not possess the right to vote for members of the House of Representatives and the Senate.  *See id.* at 597-98 (holding that because Puerto Rico is not a state of the United States within the meaning of the Constitution, under Article I its residents do not have the right to vote for members of the House of Representatives).

In UOCAVA, Congress directed that "[e]ach State shall permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."  52 U.S.C. § 20302(a)(1).  The statute defines "overseas voter" as:

> (A)  an absent uniformed services voter who, by reason of active duty or service, is absent from the United States on the date of the election involved;
>
> (B)  a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or
>
> (C)  a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States.

52 U.S.C. § 20310(5).  UOCAVA further defines "State" as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa," *id.* § 20310(6), and it defines "United States, where used in the territorial sense," to mean "the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, and American Samoa," *id.* at § 20310(8).  In sum, under UOCAVA, states shall permit overseas voters covered by the Act to vote absentee if they live outside of the territorial United States (defined to include Puerto Rico, Guam, the U.S. Virgin Islands, and

4

American Samoa – and thus excluding those locations from the Act's provisions).[3]  In so doing, the statue sets a floor for absentee voting rights, but does not restrict states from extending them further.

The Illinois statute at issue here (MOVE), which also addresses voting rights of overseas citizens in federal elections, states in relevant part: "[a]ny non-resident civilian citizen, otherwise qualified to vote, may make application to the election authority having jurisdiction over his precinct of former residence for a vote by mail ballot containing the Federal offices[4] . . . " 10 Ill. Comp. Stat. Ann. 5/20-2.2, and defines "non-resident civilian citizens" as:

> civilian citizens of the United States (a) who reside outside the territorial limits of the United States, (b) who had maintained a precinct residence in a county in this State immediately prior to their departure from the United States, (c) who do not maintain a residence and are not registered to vote in any other State, and (d) whose intent to return to this State may be uncertain.

*Id.* at 5/20-1(4).  In turn, the "[t]erritorial limits of the United States" are defined to include "each of the several States of the United States and includes the District of Columbia, the Commonwealth of Puerto Rio, Guam and the Virgin Islands; but does not include American Samoa, the Canal Zone, the Trust Territory of the Pacific Islands or any other territory or possession of the United States."  *Id.* at 5/20-1(1).  In other words, Illinois law generally tracks UOCAVA in extending absentee voting rights but, notably in contrast, also allows overseas former State residents who have moved to American Samoa to vote absentee in Illinois.

---

[3] Under UOCAVA, U.S. citizens who are in the military or the merchant marine and their spouses and dependents – "absent uniformed services voter[s]" – retain the right to vote in federal elections by absentee ballot in their last state of residence even if they move to a United States territory such as Puerto Rico, Guam, or the U.S. Virgin Islands. *See* 52 U.S.C. § 20310(1)(A-C) (member of "uniformed service on active duty" or "merchant Marine" need only be "absent from the place of residence where the member is otherwise qualified to vote.").

[4] "Federal office" is defined to include "the offices of President and Vice-President of the United States, United States Senator, Representative in Congress, delegates and alternate delegates to the national nominating conventions and candidates for the Presidential Preference Primary."  10 Ill. Comp. Stat. Ann. 5/20-1(6).

## II.     PLAINTIFFS' ALLEGATIONS

Plaintiffs are six individuals that allege they are former residents of Illinois who have since moved to Puerto Rico, Guam, or the U.S. Virgin Islands, and two organizations, the Iraq Afghanistan and Persian Gulf Veterans of the Pacific ("IAPGVP") and League of Women Voters of the Virgin Islands ("LWV-VI").  Compl. ¶¶ 11-18, ECF No. 1.  Each individual Plaintiff alleges that he or she voted for President and/or voting members of the U.S. House of Representatives and Senate while residing in Illinois, *id.* at ¶¶ 11-15, save for one individual Plaintiff that alleges she voted by absentee ballot while working in the Virgin Islands temporarily before permanently residing there, *id.* at ¶ 16.  IAPGVP alleges that its mission is "to provide opportunities to engage, enrich, and empower Pacific Island Veterans . . . and their families," and is composed of current residents of Guam who are former residents of Illinois and other states. *Id.* at ¶ 17.  LWV-VI was founded to promote "political responsibility through informed voters who actively participate in government" and its membership includes current residents of the Virgin Islands who are former residents of Illinois and other states.  *Id.* at ¶ 18.

In their claims for relief, Plaintiffs allege that UOCAVA and Illinois MOVE violate the equal protection and due process guarantees of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 by "treating similarly situated former state residents differently based on where they reside overseas."  *Id.* at ¶ 52.  Specifically, Plaintiffs claim that "under Illinois law, former Illinois residents living in a foreign country, or American Samoa or the [Northern Mariana Islands] NMI – but not other U.S. Territories overseas – may vote in Illinois by absentee ballot" for federal office.[5]  *Id.* at ¶ 47.  Plaintiffs seek an order declaring that UOCAVA and Illinois MOVE violate the Constitution, a preliminary and permanent order enjoining Defendants to

---

[5] As noted, the State of Illinois has extended absentee voting rights to former residents in American Samoa by statute. As addressed further below, the NMI is not included in UOCAVA's statutory definition of the "United States."

accept applications to vote absentee in the next federal election in Illinois from individual

Plaintiffs, and fees and costs.  Compl. at 21 (Prayer for Relief ¶¶ a-d).  These claims must be

dismissed for failure to state a claim upon which relief can be granted against the Federal

Defendants.

## ARGUMENT

### I.  PLEADING STANDARDS

To withstand a motion to dismiss, a complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering such

a motion under Rule 12(b)(6), the Court is to construe the complaint in the light most favorable

to the plaintiff.  *Tamayo v.* Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).  The complaint

must describe the claim in sufficient detail to give the defendant "fair notice of what the . . .

claim is and the grounds upon which it rests."  *E.E.O.C. v. Concentra Health Servs, Inc.*, 496

F.3d 773, 776 (7th Cir. 2007).

### II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A.  UOCAVA Does Not Prohibit Plaintiffs from Voting for Federal Office via Absentee Ballot.

Contrary to their allegations, UOCAVA does not prevent Plaintiffs from voting absentee

in Illinois for federal office.  Instead, as a result of limitations established by the Constitution, it

is the State of Illinois which imposes the voting restrictions of which Plaintiffs complain. As

described above, the Constitution provides that it is the States, rather than the federal

government, that determine the manner in which their presidential, vice-presidential, and

congressional electors are chosen.  U.S. CONST. art. II, § 1, cl. 2; *id.* at art. I, § 2, cl. 1-4; *id.* at

amend. XVII.  Because Puerto Rico, Guam, the U.S. Virgin Islands, and American Samoa are

7

concededly not states, these territories are not entitled under Article II to choose electors for President, *Igartua I*, 32 F.3d at 9-10 (internal citations omitted), or under Article I and the Seventeenth Amendment to elect members of Congress or the Senate. As the First Circuit noted, this disadvantage is not imposed by any federal statutory scheme, but is a consequence of the Constitution itself. *Igartua I*, 32 F.3d at 10-11.

In turn, it is the State of Illinois – not the Secretary of Defense, the Federal Voting Assistance Program, its director, or the United States of America – that determines how to fashion absentee voting rights in Illinois. UOCAVA merely supplies a floor for these rights, providing that "[e]ach State shall *permit*" absent overseas voters "to vote by absentee ballot" in elections for Federal office. 52 U.S.C. § 20302(a)(1) (emphasis added). By directing states to *permit* absent overseas voters to vote by absentee ballot for federal office, UOCAVA in no sense denies states the ability to broaden the right to vote by absentee ballot to individuals who do not meet the federal statute's definition, *see* 52 U.S.C. §§ 20310(5)-(6), (8). Indeed, Illinois has already done precisely that: Illinois MOVE extends absentee voting rights to former state residents that now reside in American Samoa, despite the fact that such residents are expressly *not* covered by UOCAVA. *See* 10 Ill. Comp. Stat. Ann. 5/20-1(1) (excluding American Samoa from its definition of the United States); *cf.* 52 U.S.C. § 20302(a)(1) (defining the United States to *include* American Samoa, such that individuals living in that territory are not considered overseas voters with guaranteed absentee voting rights under UOCAVA). The federal statute likewise provides no barrier to Illinois extending the same rights to former state residents living in Puerto Rico, Guam, or the U.S. Virgin Islands, such as Plaintiffs. Thus, UOCAVA does not prevent Plaintiffs from voting absentee in Illinois, rather, the State that imposes this restriction.

Indeed, Plaintiffs' Complaint acknowledges as much and effectively alleges that state law governs their absentee voting rights. Plaintiffs appear to recognize that it is the definition

8

articulated in Illinois MOVE, *not* UOCAVA, that governs their voting rights: "Under UOCAVA and Illinois MOVE, [an individual plaintiff] would continue to be able to vote for President and voting Members of the U.S. House and Senate by absentee ballot in Illinois if he were a resident of the NMI, *American Samoa*, or a foreign country." Compl. ¶ 14(a) (emphasis added). But it is only Illinois law that extends absentee voting rights to residents of American Samoa, such that Plaintiffs' allegation is only an accurate restatement of Illinois MOVE, and not the federal statute. *Cf.* 10 Ill. Comp. Stat. Ann. 5/20-1(1) with 52 U.S.C. § 20302(a)(1).

Plaintiffs further acknowledge that the Illinois Defendants, rather than the Federal Defendants, are capable of providing to Plaintiffs the relief they seek. Although in their Prayer for Relief Plaintiffs seek an injunction against "Defendants" generally, *see* Compl. at 21 (Prayer for Relief ¶ b), the Complaint singles out the Illinois Defendants in its specific request for relief, seeking an "injunction directing Defendants Board of Election Commissioners for the City of Chicago, Langdon D. Neal [its Chairman], and Karen Karen Kinney [Rock Island County Clerk] to accept Individual Plaintiffs' applications to vote absentee in federal elections in Illinois." Compl. ¶ 10. Plaintiffs apparently recognize that only the Illinois Defendants can deliver the remedy they seek, as the Federal Defendants have no role in accepting or rejecting Illinois absentee ballots. Because it is state law, rather than UOCAVA, which prohibits Plaintiffs from voting absentee in Illinois, Plaintiffs have failed to state a claim upon which relief can be granted against the Federal Defendants.

### B. UOCAVA Meets the Requirements of the Equal Protection and Due Process.

Plaintiffs allege that UOCAVA violates equal protection and due process principles, as protected by the Fourteenth Amendment and the Fifth Amendment. Compl. ¶ 54. They claim that by "protect[ing] the right to vote for *certain* U.S. citizens who move overseas, while denying it to others who are similarly situated," UOCAVA unfairly discriminates among U.S. citizens

and violates the Constitution. Compl. ¶¶ 48-51 (original emphasis). As the First and Second Circuits each concluded in analogous cases, this claim lacks merit. *See Igartua I*, 32 F.3d at 10-11 (upholding UOCAVA against an equal protection and due process challenge brought by former state residents seeking to vote by absentee ballot from Puerto Rico); *Romeu*, 265 F.3d at 127 (same).

### i. Standard of Review

The Supreme Court has explained the proper method for analyzing claims under the Equal Protection Clause: "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985) (internal citations omitted); *Romeu v. Cohen*, 121 F.Supp.2d 264, 283 (S.D.N.Y. 2000), *aff'd* 265 F.3d 118 (2d Cir. 2001). The First Circuit affirmed the applicability of this standard to an equal protection and due process challenge to UOCAVA, holding that the distinction Plaintiffs identify "need only have a rational basis to pass constitutional muster" because it "neither affects a suspect class nor infringes a fundamental right." *Igartua I*, 32 F.3d at 10; *see also id.* at 10 n.2 ("Although it affects the right to vote, [UOCAVA] does not infringe that right but rather limits the state's ability to restrict it.").

The Supreme Court has also indicated that this type of statutory classification is subject only to rational basis review. In *Katzenbach v. Morgan*, 384 U.S. 641 (1966), plaintiffs challenged section 4(e) of the Voting Rights Act, which barred states from applying English literacy requirements to voters educated in American-flag schools in which English was not the predominant classroom language. *Id.* at 643 & n.1. Plaintiffs claimed that the statute discriminated against voters educated in a language other than English in non-American-flag schools, meaning "that Congress violated the Constitution by not extending the relief effected in

10

[the relevant section] to those educated" outside a territory of the United States. *Id.* at 656-57. The Court explained that, because "the distinction challenged by [plaintiffs] is presented only as a limitation on a reform measure aimed at eliminating an existing barrier to the exercise of the franchise" the Court should be "guided by the familiar principle that a statute is not invalid under the Constitution because it might have gone farther than it did." *Id.* (internal citations omitted). The Supreme Court rejected plaintiffs' discrimination claim, holding that "the principle that calls for the closest scrutiny of distinctions in laws *denying* fundamental rights . . . [was] inapplicable." *Id.* at 657. Because the Court found legitimate grounds that "might well have been the basis for the decision of Congress to go 'no farther than it did,'" the Court upheld section 4(e) against the plaintiffs' equal protection challenge. *Id.* at 658. Rational basis review, rather than the heightened scrutiny appropriate for distinctions in laws *denying* rights, likewise applies to Plaintiffs' challenge to UOCAVA.[6]

### ii.    UOCAVA Passes Rational Basis Review

In extending absentee voting protections, Congress distinguished between U.S. citizens who move to a different jurisdiction within the United States and those who move overseas. The "primary purpose" of UOCAVA "is to facilitate absentee voting by United States citizens, both military and civilian, who are overseas" and "who would otherwise be disenfranchised." *See* H.R. REP. NO. 99-765, at 5-6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2009, 2009-2010 [hereinafter "1986 House Report"]. Congress expressed concern that "most American citizens residing outside the United States, who are in the private sector, continue to be excluded from the

---

[6] Although relevant Supreme Court precedent describes rational basis review as the appropriate legal standard, the Second Circuit declined to decide the precise standard of review in a similar challenge to UOCAVA, explaining that "regardless whether this distinction is appropriately analyzed under rational basis review or intermediate scrutiny, or under some alternative analytic framework independent of the three-tier standard that has been established in Equal Protection cases . . . Congress may distinguish between those U.S. citizens formerly residing in a State who live outside the U.S., and those who live in the territories."). *Romeu*, 265 F.3d at 124.

democratic process of their own country." S. REP. No. 94-121, at 5 (1975), *reprinted in* 1975 U.S.C.C.A.N. 2359, 2363.

Absent UOCAVA, citizens that move outside the United States might be completely excluded from participating in federal elections in the United States, *Romeu*, 265 F.3d at 124-25, as would be the case for citizens moving from Illinois to a foreign country. But citizens that move from the United States to Puerto Rico, Guam, or the U.S. Virgin Islands such as Plaintiffs acquire new voting rights in these territories and may vote in local elections for officials of the territories' respective governments, as well as in each territory's federal elections for non-voting delegates. Thus, the First Circuit concluded that because "voters who move overseas could lose their right to vote in all federal elections . . . [while] voters who move to a new residence within the United States are eligible to vote in a federal election in their new place of residence," "Congress had a rational basis for seeking to protect the absentee voting rights only of the former." *Igartua I*, 32 F.3d at 11.

Plaintiffs' Complaint boils down to a dissatisfaction with the fact that former Illinois residents that move to American Samoa or the NMI gain new voting rights *and* retain the right to vote absentee in Illinois for federal office, whereas former Illinois residents that move to Puerto Rico, Guam, or the U.S. Virgin Islands do not retain that right. *See* Compl. ¶ 44. But, as previously explained, *supra* at 7-9, it is Illinois MOVE, not UOCAVA, that defines the relevant territorial boundaries of the United States for purposes of Illinois absentee voting rights. Illinois has already extended absentee voting rights to former residents currently residing in American Samoa – a protection that goes beyond that which is provided for in the federal statute – and UOCAVA likewise does not restrict Illinois from similarly extending such rights to former residents living in Puerto Rico, Guam, or the U.S. Virgin Islands. Thus, Plaintiffs' grievance can

12

be addressed through state law and does not result from UOCAVA, which expands absentee voting rights.

Moreover, the fact that former Illinois residents that move to the NMI – also a U.S. Territory – may vote absentee in Illinois does not render UOCAVA unconstitutional. Plaintiffs' claim in this respect appears to rest not with any express distinction in the statute among U.S. territories but, more likely, turns on a matter of historical timing. At the time UOCAVA was enacted in August 1986, the Covenant between the U.S. and the NMI regarding its territorial status was not yet fully effectuated, and the NMI was not included in the definition of the territorial United States in the Act.[7]

The fact that this anomaly was not corrected in the Act after the NMI became a U.S. territory does not render UOCAVA unconstitutional. Again as noted, UOCAVA does not restrict any voting rights but expands them to cover certain overseas voters. The distinction drawn by Congress in doing so was within its constitutional authority and has a rational basis. *See Romeu*, 265 F.3d at 124-25. The law is clear that Congress was not required to extend absentee voting rights to all U.S. territories but could permissibly provide a partial remedy to a problem of disenfranchisement even if legislation could have swept more broadly. As *Katzenbach* instructs, voting rights reform legislation "is not invalid under the Constitution because it might have gone farther than it did." 384 U.S. at 657; s*ee also Romeu*, 265 F.3d at 125 (upholding absentee voting statutes that were "designed to make voting more available to some groups who cannot easily get to the polls," without making voting more available to all such groups, on the ground that legislatures may "take reform 'one step at a time'" (citing

---

[7] The NMI and the United States reached a Covenant Agreement that became fully effective on November 4, 1986, whereby NMI became a Commonwealth of the United States and residents of the NMI became citizens of the United States. *See* Horey, Joseph E., *The Right of Self-Government in the Commonwealth of the Northern Mariana Islands*, 4 Asian-Pac. L. & Pol'y J. 180, 245, n. 49 (2003), (citing 48 U.S.C.A. § 1801 (West 2015)). UOCAVA was passed by Congress roughly three months prior, on August 7, 1986. *See* 1986 House Report.

*McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807-809 (1969))). The Supreme Court's teaching that a legislature need not "strike at all evils at the same time," *Semler v. Oregon State Bd. of Dental Exam'rs*, 294 U.S. 608, 610 (1935), plainly applies to Congress's decision to extend absentee voting rights to some, but not all, overseas voters simultaneously. And, the fact that a distinction now exists between one U.S. territory and the others under the Act can be addressed under state law, where the Constitution places that responsibility. Thus, the fact that former residents of Illinois currently living in the NMI (but not other U.S. territories) retain the right to vote absentee for federal office does not render UOCAVA unconstitutional.

Nor would inclusion of the NMI as part of the definition of the territorial United States now under UOCAVA (and thus exclusion from the protections of the Act) redress the alleged injury of former Illinois residents in other U.S. territories such as Plaintiffs. Rather, what Plaintiffs appear to demand is that, in part because the NMI is not included in the definition of the territorial United States, the Court should declare the Act unconstitutional, supplant Congress's judgment to limit the expansion of absentee voting rights to certain overseas locations, and legislate such rights for Plaintiffs who reside in all U.S. territories expressly excluded from the Act. Nothing in the Constitution remotely requires or permits this result.

As *Romeu* noted, Congress's regulation of U.S. territories under Article IV of the Constitution "is not 'subject to all the restrictions which are imposed upon [Congress] when passing laws for the United States.'" 265 F.3d at 122 (citing *Dorr v. United States*, 195 U.S. 138, 143 (1904)). For voting rights, the status of a U.S. citizen living in U.S. territories is not identical to that of a U.S. citizen living in a State. *See id.* That is again because the process set out in Article II for the appointment of electors is limited to "States" and does not include territories. *See id.* at 123; *see also* U.S. CONST. art. I, § 2, cl. 1-4; *id.* at amend. XVII (same for Congress). Thus "[w]hile the [UOCAVA] does not guarantee that a citizen moving to Puerto

Rico [or Guam, or the U.S. Virgin Islands] will be eligible to vote in a presidential [or Congressional] election, this limitation is not a consequence of the Act but of the constitutional requirements . . . . " *Igartua I*, 32 F.3d at 11. For this reason, Plaintiffs' challenge appropriately lies with the State of Illinois, which has independent authority to regulate the extension of absentee voting rights for former residents such as Plaintiffs, not as to the Federal Defendants. Ultimately, "the absence of presidential and vice-presidential [and Congressional] voting rights for U.S. citizens living in U.S. territories does not violate the Constitution." *See Romeu,* 265 F.3d at 123; *Igartua I*, 32 F.3d at 9-10.

### C. Plaintiffs' § 1983 Claim Against the Federal Defendants Must Be Dismissed.

Finally, Plaintiffs fail to state a § 1983 claim against the Federal Defendants. Section 1983 enables aggrieved individuals to redress deprivations of Constitutional rights where the deprivations occur under the color of state law. *See* 42 U.S.C. § 1983. The Seventh Circuit has confirmed that in order to seek relief under § 1983, plaintiffs must allege that the defendant acted under color of *state* law, *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996), and that the federal government and its officers act under color of *federal* law. *Meiners v. Moriarity*, 563 F.2d 343, 348 (7th Cir. 1977); *see also District of Columbia v. Carter*, 409 U.S. 418, 424 (1973) ("[t]he statute deals only with those deprivations of rights that are accomplished under the law of 'any State or Territory' . . . actions of the Federal Government and its officers are beyond the purview" of § 1983). Here, Plaintiffs have not alleged that the Federal Defendants acted under the color of state law vis a vis UOCAVA. Accordingly, Plaintiffs' § 1983 claim against the Federal Defendants must be dismissed.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for failure to state a claim upon which relief can be granted against the Federal Defendants.

15

Dated: February 10, 2016                    Respectfully submitted,

                                            BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney General

                                            ANTHONY J. COPPOLINO
                                            Deputy Branch Director

                                            ZACHARY T. FARDON
                                            United States Attorney

                                            THOMAS WALSH
                                            Assistant United States Attorney

                                            _s/ Caroline Anderson_
                                            Caroline J. Anderson
                                            IL Bar No. 6308482
                                            Trial Attorney
                                            U.S Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., N.W., Room 5102
                                            Washington, D.C. 20001
                                            Phone: (202) 305-8645
                                            Caroline.J.Anderson@usdoj.gov

                                            _Counsel for Federal Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2016, a copy of the foregoing Memorandum in Support of

the Federal Defendants' Motion to Dismiss was filed electronically.  Notice of this filing will be

sent by email to all parties by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's CM/ECF System.


*/s/ Caroline J. Anderson*
Caroline J. Anderson